IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


ROBERT DANIELS,

       Petitioner,

v.                                      CIV 01-1322 MV/KBM

RON LYTLE, Warden, et al.

       Respondents.


## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Robert Daniel's petition for a writ of habeas corpus

under 28 U.S.C. § 2254 *(Doc. 1),* and Respondents' Answer and Motion to Dismiss *(Docs. 10 &*

*12).* Under the applicable standards of the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"),[1] I find the petition without merit and recommend that it be denied. An evidentiary

hearing is unnecessary because all of the issues are resolved on the record. *E.g., Trice v. Ward,*

196 F.3d 1151, 1159 (10th Cir. 1999), *cert. denied,* 531 U.S. 835 (2000); Rule 8(a), *Rules*

*Governing Habeas Corpus Under Section 2254.*

---

[1] AEDPA applies to all cases filed after its effective date. *E.g., Paxton v. Ward,* 199 F.3d 1197, 1204 (10th Cir. 1999). Under AEDPA standards, a federal court cannot grant a writ of habeas corpus unless: (1) the state court decision is "contrary to, or involved an unreasonable application of . . . Supreme Court" precedent; or (2) is "an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. §§ 2254(d)(1)-(2); *see also Williams v. Taylor,* 529 U.S. ___ , 120 S. Ct. 1495 (2000); *Van Woudenberg v. Gibson,* 211 F.3d 560, 566 & n. 4 (10th Cir. 2000), *cert. denied,* 531 U.S. 1161 (2001).

# I. Factual Background

The state charged Petitioner with shooting two cars and the house of his former

girlfriend.[2] *Answer, Exh. A.*[3]  As Petitioner's counsel described on appeal:

> The state introduced evidence that a weapon had been fired
> outside 4804 Leon Grande in Rio Rancho, the home of defendant's
> former girlfriend, Ms. St. Claire.  Bullets were later found lodged in
> the window frame of the house and in two different vehicles parked
> near the house.  Although there were people in the house, no one
> saw the actual shooting.  No one was near the cars at the time of
> the shooting.  Mr. Daniel's car had been seen earlier in the day
> driving past the residence.

> After the shooting, Ms. St. Clair called her mother to tell
> her about the incident.  Ms. St. Clarie's stepfather saw Mr. Daniels
> sitting in his car parked in front of their house.  He went outside
> and lured Mr. Daniels from his parked car to the house.  Ms. St.
> Claire's mother then went out to the car to search it and noticed a
> duffel bag inside.  The car was unlocked, she went into the vehicle,
> retrieved the bag and found a weapon.  The weapon was later
> identified as the weapon that discharged the bullets into the home
> and cars 4804 Leon Grande.

> The arresting officer testified that Mr. Daniels had
> repeatedly asked him to perform a gunpowder residue test but the
> officer refused to do it.  A firearm expert testified that that test was
> no longer done by police departments.  He also testified that
> gunpowder can be removed by washing one's hands.  Ms. St.
> Claire's stepfather testified that after he led Mr. Daniels into the
> house, Mr. Daniels went to use the restroom.

> At the motion for directed verdict, defense counsel moved
> the court to dismiss all the charges on the grounds that the state had
> failed to collect exculpatory evidence when the police refused to
> perform the gunpowder primer test.  The judge denied that motion
> but directed-out the "shooting from a motor vehicle charge" since

---

[2]  The state court pleadings refer to the victim both as an ex-wife and a former girlfriend.
For the sake of consistency, I use the latter.

[3]  Unless otherwise noted, all references to Exhibits are those attached to Respondents'
Answer.

there was no evidence that the bullets had been fired from a vehicle.

*Exh. D* at 2-3.

Daniels testified on his own behalf. In cross-examining Petitioner, the prosecutor tried to

elicit testimony about an altercation Daniels had with Ms. St. Claire earlier the day of the

shooting.

> Daniels allegedly drew a knife. There was objection from defense
> counsel which, at first, was overruled and then was sustained.
> However, the jury did hear about the domestic dispute before the
> court sustained the objection. The jury did not hear about the
> knife.

*Id.* at 7; *see also Exh. B* at 2.

In addition, the defense

> introduced evidence from which the jury could infer that Mr.
> Daniels could not have been the shooter because he was at the
> home of Ms. St. Claire's parents near the time of the shooting and
> he could not have traveled to and from the site of the shooting in
> the time frame established by the police.

*Exh. D* at 3. The defense theorized that someone planted the shell casings because when

Petitioner lived at the residence, he "routinely reloaded and reused spent shell casings" and

because the casings were suspiciously arranged at the crime scene "in a helter skelter manner in

front of the residence." *See Exh. B* at 2, *Exh. D* at 9.

## II. Procedural Background

A jury convicted Petitioner on the remaining counts – shooting at a dwelling and at two

parked cars near the dwelling. On June 5, 2000, he was sentenced to a total term of three years

incarceration[4] and one year parole. *Exh. A*. Petitioner's trial attorney filed the docketing

statement. Thereafter, the state public defender undertook Daniel's representation on appeal.

Counsel raised a total of six issues,[5] which the Court of Appeals found without merit. *See Exhs.*

*B, D, E*. In the petition for certiorari, however, counsel only raised one issue – double jeopardy.

*Exh. F*. After extending its time to review the petition, the New Mexico Supreme Court denied

certiorari on December 21, 2000 and issued the mandate on February 15, 2001. *Exhs. G, H*.

Petitioner timely filed this action and as grounds for relief he references the pleadings counsel filed

on direct appeal. *Doc. 1*.

## III.  Analysis

### A.  *Petition Is Not Completely Exhausted*

Respondents contend all of the issues except double jeopardy are procedurally defaulted

because they were not raised in the petition for certiorari before the New Mexico Supreme Court.

Respondents' position is the state courts would find the other claims procedurally-barred and,

---

[4]   Daniels wrote Judge Vázquez on January 28, 2002, contending prison authorities are holding him in prison beyond his "release date" of September 21, 2001 to a program at the Dimas House in Albuquerque. Plainly, however, his three-year sentence has not yet expired. Petitioner's assertion that he is not being transferred to the program in retaliation for filing this suit is not cognizable in federal habeas corpus proceedings under § 2254. If any relief lies for this assertion, it is in a civil action under 42 U.S.C. § 1983. *See Meachum v. Fano,* 427 U.S. 215, 226-27 (1976) (generally inmates have no legally protected interest in confinement in particular location); *Peterson v. Shanks,* 149 F.3d 1140, 1144 (10th Cir. 1998) (prison officials may not retaliate against or harass inmates because of exercise of his constitutional rights even if officials' action is otherwise permissible).

[5]   They were:  (1) denial of fair trial and due process by allowing the jury to hear of the prior altercation; (2) denial of fair trial and due process by not administering a gun powder residue test at the time of arrest as Daniels requested; (3) search and seizure in violation of the Fourth Amendment when the victim's mother took Daniels' gun from his car; (4) sufficiency of the evidence; (5) cumulative error; and (6) double jeopardy for the convictions and separate sentences for each of the two cars shot.

thus, there is an independent and adequate state ground to deny the claims for which Petitioner

cannot show cause or prejudice to excuse the default.

I disagree. The issue is exhaustion, not procedural default. Here the state court did not

refuse to consider the claim on procedural grounds. Rather, the highest state court has not had an

opportunity to entertain the claims.[6] Furthermore, since the pleadings on direct appeal were

prepared by counsel, the obvious argument for cause is ineffective assistance of counsel.

However, ineffectiveness as grounds for excusing the default itself must be exhausted in the state

courts. For example, counsel's ineffectiveness could be litigated in state habeas proceedings that

Daniels has not yet pursued. *See Edwards v. Carpenter,* 529 U. S. 446, 451-53 (2000).

Nevertheless, this court has the authority to deny unexhausted claims that are without

merit. *E.g., Van Woudenberg,* 211 F.3d at 569; *Brown v. Shanks,* 185 F.3d 1122, 1123 (10th Cir.

1999); 28 U.S.C. § 2254(b)(2). I elect to do so rather than require additional useless litigation in

the state courts. *Grandberry v. Greer,* 481 U.S. 129, 133 (1987).

---

[6]    The State argues as a threshold matter that review of Nichols' due
process challenge to his convictions is barred by the procedural
default doctrine. *See Wainwright v. Sykes,* 433 U.S. 72 (1977)
(non-compliance with a state procedural rule bars federal habeas
corpus review, absent showing of cause and prejudice).
Notwithstanding the State's characterization of its new argument,
however, a brief examination of it makes plain that the State is
raising an argument concerning the failure to exhaust state
remedies. The State does not contend that the New Mexico state
courts refused to consider Nichols' challenge to his convictions
because he failed to comply with a state procedural requirement,
but rather that Nichols does not raise the challenge in his habeas
petition in the same form as he presented it to the state courts.
Hence, we treat the State's argument as a nonexhaustion-
of-state-remedies defense.

*Nichols v. Sullivan,* 867 F.2d 1250, 1252 (10th Cir.), *cert. denied,* 490 U.S. 1112 (1989).

## B.  Fourth Amendment Claim Is Not Cognizable

Even if trial counsel did not pursue a motion to suppress before trial, the Fourth

Amendment issue was considered on the merits on direct appeal.  Having been given an

opportunity to litigate the Fourth Amendment claim in the state courts, the claim is not cognizable

in federal habeas.  *Stone v. Powell,* 428 U. S. 465, 494 (1976); *see also e. g., Smallwood v.*

*Gibson,* 191 F. 3d 1257, 1265 (10th Cir. 1999), *cert. denied,* 531 U.S. 833 (2000).  Furthermore,

as the state court held, a private search having no governmental involvement does not implicate

the Fourth Amendment.  *E.g., United States v. Humphrey,* 208 F.3d 1190, 1203 (10th Cir. 2000)

("It is clear that the Fourth Amendment does not apply to searches by private parties, absent

governmental involvement.").

## C.  Failure To Preserve Exculpatory Evidence (Gun Powder Tests)

The New Mexico Court of Appeals rejected this claim relying on a state decision which

distinguishes between "collecting" and "preserving" evidence.  Thus, the federal constitutional

decisions were implicitly found by the state as inapplicable.  *See Exh. E* at 3-4; *see State v. Ware,*

118, N.M. 319, 322-23, 881 P.2d 679, 682-83 (N.M. 1994) (*Youngblood* and *Trombetta* not

applicable to claim of "failure to collect evidence from the crime scene in the first place" and

relying on state law decisions).

Federal decisions do not make a distinction between "collecting" and "preserving," and as

a matter of federal constitutional law, claims of failure to preserve exculpatory evidence require a

showing of bad faith on the part of the police.[7]  Part of the federal inquiry is whether the evidence

---

[7]     Weise contends the police violated his due process rights by failing
to preserve critical evidence. . . . Specifically, Weise challenges the
police's failure to give him a blood alcohol test.  Weise also

was "exculpatory."  This is because the duty to preserve evidence is "'limited to evidence that

might be expected to play a significant role in the suspect's defense' – i.e., evidence that is

constitutional material."  *Parker,* 72 F.3d at 1451.  On the other hand, the "mere possibility that

lost or destroyed evidence could have exculpated a defendant is not sufficient."  *Id.*

　　Even though the state court decision did not apply federal law, its decision must be

considered under AEDPA.  The Court of Appeals' ultimately found the claim without merit.  It

concluded that the guilty verdict would not have been different even if tests showed Petitioner had

no gunpowder on his hands.  In reaching this conclusion, the court relied on certain factual

findings:

> Defendant had not argued that he was prevented from examining
> the prosecution's witnesses about the deficiencies of their
> investigation. . . .  Defendant acknowledges that there was evidence
> that gun powder residue can be washed from one's hands and that
> Defendant had used the bathroom between the time of the shooting
> an his arrest. . . .  There was also evidence that the shells found in
> front of the Victim's house came from  Defendant's gun and that
> Victim had seen him driving through the neighborhood.

*Exh. E* at 4.  Since those findings are not rebutted by clear and convincing evidence, they are

presumed correct in this federal habeas proceeding.  28 U.S.C. § 2254(e)(1).

---

> complains the police did not collect the empty beer cans at the
> crime scene, or record the telephone call reporting the stabbing.
> Contrary to Weise's view, the failure to preserve potentially useful
> evidence does not violate due  process unless the defendant can
> show the police acted in bad faith.

*United States v. Weise,* 89 F.3d 502, 504 (8th Cir. 1996).  A Tenth Circuit decision characterizes
this area of constitutional law as "constitutionally guaranteed access to evidence."  *United States
v. Parker,* 73 F.3d 1444, 1451 (10th Cir. 1995); *see also e.g., Arizona v. Youngblood,* 488 U. S.
51 (1988); *California v. Trombetta,* 467 U. S. 479 (1984); *United States v. Gomez,* 191 F. 3d
1214, 1218 (10th Cir. 1999); *Fero v. Kerby,* 39 F. 3d 1462, 1472 (10th Cir. 1994), *cert. denied,*
515 U. S. 1122 (1995).

I cannot find that the state court's decision was contrary to or an unreasonable application of established Supreme Court precedent. Based on the same facts relied upon by the state court, I independently conclude the exculpatory value of the evidence was not apparent because of the likelihood of dissipation due to washing. I find no evidence of bad faith on the part of the police under these circumstances. In any event, Defendant introduced the absence of proof of gunpowder residue through examination of the prosecution's witnesses. *See Parker,* 72 F.3d 1451-52. Accordingly, I find this claim without merit.[8]

### D. Sufficiency of Evidence & Introduction of Prejudicial Evidence (Prior Altercation)

The Tenth Circuit has not resolved whether sufficiency of evidence claims are considered questions of law or fact under AEDPA. *Fields v. Gibson,* ___ F.3d ___, 2002 WL 59692 *13 (10th Cir. 1/17/02). Nevertheless, the relevant inquiry is whether, after viewing all of the evidence "in the light most favorable to the prosecution, **any** rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis original). The court can neither reweigh the evidence nor substitute its judgment for that of the jury. *E.g., Wingfield v. Massie,* 122 F.3d 1329, 1332 (10th Cir. 1997),

---

[8] *C.f.,Vazquez v. Rossnagle,* 163 F.Supp.2d 494, 500 (E.D. Pa. 2001) ("The plaintiff alleges that the defendant violated his constitutional rights by not allowing him to take a gunpowder residue test and by disregarding other potentially exculpatory evidence. Once the defendant had established that there was probable cause for an arrest, however, he did not need to confirm his finding of probable cause through additional investigations. . . . Even had Officer Rossnagle been under an obligation to conduct further investigation, the record suggests that neither a gunpowder residue test nor the other potentially exculpatory evidence could have negated the probable cause for Vazquez' arrest."); *Goins v. Angelone,* 52 F.Supp.2d 638, 652 (E.D. Va. 1999) (counsel not ineffective for failing to investigate whether another person's clothing tested positive for blood or gunpowder residue because "test clothing worn by Scott on the day of the shootings would have been pointless since Scott turned himself into police several days after the murders, when he would have had ample time to discard or wash the clothing"), *appeal dismissed,* 531 U.S. 833 (4th Cir.), *cert. denied,* 531 U.S. 1046 (2000).

*cert. denied,* 523 U.S. 1005 (1998). This is the same standard to be applied by the New Mexico

appellate courts for a sufficiency of the evidence claim, and the one identified by the state court in

this case. *E.g., State v. Rojo,* 126 N.M. 438, 444-45 (1999) (sufficiency); *State v. Kersey,* 120

N.M. 517, 520 (1995) (*Jackson* standard); *see also Exh. E* at 6.

      The New Mexico Court of Appeals found the evidence sufficient because the jurors heard

evidence that: the victim saw Petitioner driving past her house on the day shots were fired; the

shell casings found outside the victim's home were fired from Petitioner's gun; and the gun was

found in the car in which Petitioner sitting. *Exh. E.* at 6. I find this evidence substantial and also

find the jurors' verdict reasonable, particularly since they heard testimony from both the victim

and Petitioner and could assess their credibility.

      In addition, it is well settled that violations of state law, such as evidentiary rulings, are not

cognizable in federal habeas corpus unless the ruling violates an independent provision of the

Constitution. Thus, even erroneous evidentiary rulings are not grounds for federal habeas relief,

unless the rulings render the state proceedings so fundamentally unfair as to violate due process.

*E.g., Stills v. Dorsey,* 7 Fed.Appx. 856, 858, 2001 WL 303351 (10th Cir. 2001) (unpublished)

("Erroneous evidentiary rulings are not grounds for federal habeas relief unless the rulings render

the state proceedings so fundamentally unfair as to violate due process. *See Williamson v. Ward,*

110 F.3d 1508, 1522-23 (10th Cir. 1997).").

      The Court of Appeals found Petitioner was not denied a fair trial when the jurors heard of

his prior altercation with his former girlfriend. In so holding, it cites a case that stands for the

proposition that a "prompt" admonition to disregard evidence cures any prejudicial effect.

However, nothing in the record indicates that the trial judge separately admonished the jurors

right after his ruling. Evidently, the Court of Appeals' decision found no prejudice because of the

trial judge's general instructions to the jurors *before trial* to not consider inadmissible evidence.

*See Exh. E* at 3; *Exh. D* at 7.

Even if the trial judge erred in not giving a separate admonition and "admission of the

prior acts testimony was constitutionally erroneous," I would nevertheless "conclude that the

error was harmless" based on the sufficiency finding.

> Federal courts grant habeas relief for errors of the 'trial type' only
> when the error had a substantial and injurious effect in determining
> the jury's verdict. . . . The evidence in this case . . . amply supports
> the guilty verdict and sentence . . . . Thus, we have no doubt that
> any error that might have occurred here was harmless.

*Duvall v. Reynolds,* 139 F.3d 768, 788 (10th Cir.), *cert. denied,* 525 U.S. 933 (1998).

### F. Double Jeopardy

Because the victim had two cars and both were shot, the jury convicted Petitioner of two

counts of fourth degree felony "shooting *at* a motor vehicle" under N.M. STAT. ANN. § 30-3-

8(B). The pertinent part of subsection B provides:

> Shooting *at or from a motor vehicle* consists of willfully
> discharging a firearm at or from a motor vehicle with reckless
> disregard for the person of another. Whoever commits shooting at
> or from a motor vehicle that does not result in great bodily harm to
> another person is guilty of a fourth degree felony.

*Id.* (emphasis added). Likewise, the jury convicted Petitioner of one count of fourth degree

felony "shooting *at* a dwelling" under § 30-3-8(A).[9] Because the trial judge found no evidence

that Daniels shot from inside his car, the trial judge directed out the "shooting *from* a motor

---

[9] "Shooting at a dwelling . . . consists of willfully discharging a firearm at a dwelling . . . . Whoever commits shooting at a dwelling . . . that does not result in great bodily harm to another person is guilty of a fourth degree felony."

vehicle" charge. *Exh. D* at 3. Based on the three counts of conviction, the trial court sentenced

Petitioner to three eighteen month terms, to be served consecutively, and suspended eighteen

months.

On appeal as well as in the petition for certiorari, Petitioner made the same arguments for

being allowed to amend the docketing statement to raise a double jeopardy claim:

> Mr. Daniels was convicted of one incident of shooting at two
> different vehicles, owned by the same person, parked at the same
> address. Applying the principles of the *Herron* line of cases to this
> case[:]  (1) the shootings were committed at the same time; (2) they
> occurred at only one location; (3) there were no intervening
> event[s]; (4) the shootings were committed in sequence; (5) there
> was only one state of mind alleged . . . and (6) there was only one
> victim.
>
> * * * * *
>
> In the absence of some indication of legislative intent, the
> rule of lenity favors a single unit of prosecution and disfavors
> multiple units of prosecution. Under the circumstances of this case,
> this Court should find that the legislative intent for the crime of
> shooting at a motor vehicle is not clearly indicated, that the rule of
> lenity should apply, and that one count of shooting at a motor
> vehicle should be dismissed.

*Exh. D* at 6-7; *Exh. F* at 6-7.

These arguments raise "unit of prosecution"/ "multiple punishments for the same offense"

double jeopardy claims because the "protections of the Double Jeopardy Clause extend not only

to successive prosecutions for the same offense but also, as is allegedly the case here, to 'multiple

punishments for the same offense.'". *Burleson v. Saffle,* 278 F.3d 1136 (10th Cir. 2002) (internal

citations and quotations omitted). In *Burleson,* the Tenth Circuit addressed whether in the post-

AEDPA era Supreme Court precedent as to double jeopardy is "clear. " It concluded that it is.

*Id.* at 1141-42.

The Oklahoma "drive by" statute was at issue in *Burleson.* It provided:

> Every person who uses any vehicle to facilitate the intentional
> discharge of any kind of firearm, crossbow, or other weapon in
> conscious disregard for the safety of any other person or persons
> shall upon conviction be guilty of a felony punishable by
> imprisonment in the State Penitentiary for a term of not less than
> two (2) years nor more than twenty (20) years.

*Id.* at * 2. Burleson was serving two consecutive twenty-year sentences under the statute, a

separate term for each of the two intended victims during the shooting episode.

The Tenth Circuit explained that "the fact that the Supreme Court has clearly established

the unconstitutionality of multiple punishments for a single 'course of action' does not by itself

dispose of the present case." *Id.* at 1143. Rather, the inquiry is what the state legislature

intended since the "Double Jeopardy Clause could not have been offended in Burleson's case if

the Oklahoma legislature intended to allow defendants to be punished multiple times pursuant to

the state's drive-by shooting statute for engaging in a single shooting event." *Id.* And, in

> "assessing whether a state legislature intended to prescribe
> cumulative punishments for a single, criminal incident, [the federal
> habeas court is] bound by a state court's determination of the
> legislature's intent."
>
> \* \* \* \* \*
>
> Pursuant to AEDPA our task is ordinarily straightforward enough,
> even where resolution of a federal question depends upon the
> resolution of a predicate state-law question: We defer absolutely to
> the state court's disposition of the state-law question and proceed
> to review the court's application of federal law to ascertain whether
> or not it was reasonable.

*Id.* at 1143-44 (internal quotations omitted); *see also e.g., Lucero v. Kerby,* 133 F.3d 1299, 1316

(10th Cir.) ("In determining whether a defendant's conduct constitutes a single criminal offense or

separate criminal offenses for double jeopardy purposes, we defer to the state court's

interpretation of the relevant statutory provisions."), *cert. denied,* 523 U.S. 1110 (1998).

In *Burleson,* the Tenth Circuit did not have a state court decision on the issue as of the date the defendant was convicted, and it only had a summary disposition from Burleson's state proceedings that was contrary to a decision from another case. The Tenth Circuit therefore certified the issue to the state court.

In contrast, the New Mexico Court of Appeals explained its reasoning on direct appeal. The Court of Appeals found the double jeopardy claim without merit and therefore denied permission to amend the docketing statement. In so holding, the Court of Appeals found as a matter of fact that "there was evidence that Defendant shot separately at two different vehicles in Victim's driveway." *Ex. E* at 2. Since the characterization of the acts as separate and discrete is not rebutted by clear and convincing evidence, they are presumed correct in this federal habeas proceeding. 28 U.S.C. § 2254(e)(1).

Under New Mexico law, if a defendant commits two discrete acts, "the court may impose separate consecutive punishments for each offense." *Swafford v. State,* 810 P.2d 1223, 1233 (N.M. 1991). Further, if under New Mexico law the acts are discrete, this court need not look at the legislative intent question. *Kersey v. Lytle,* 215 F.3d 1337 (10th Cir. 2000) (unpublished) ("the Double Jeopardy Clause does not prohibit separate punishments for "discrete acts violative of the same statute." [*Swafford v. State,* 810 P.2d 1223, 1233 (N.M.1991) (applying U.S. Supreme Court precedent)]. Thus, if the conduct at issue is non-unitary (or consists of discrete acts), then there is no need to ascertain whether the legislature intended to create separately punishable offenses. *Id.*"). Accordingly, Petitioner's claim fails for this reason alone.

Additionally, however, the Court of Appeals also relied on *State v. Morro,*127 N.M. 763,

987 P.2d 420 (Ct. App.), *cert. denied,* 128 N.M. 149, 990 P.2d 823 (N.M. 1999), which

presented an analogous situation. In *Morro,* after fueling his anger with alcohol, defendant went

to a cemetery to damage a certain grave and while there, in his rampage damaged nine others. He

was charged with ten separate counts of defacing tombs under a statute, like the one here, that did

not expressly provide for multiple "units of prosecution. Looking at the "interests protected by

the statute" to ascertain an "understanding of who the victims are," *id.* at 423, the *Morro* court

found that "each gravestone represents distinct interests protected by the statute," *id.* at 424. It

concluded the other factors of destruction in one continuous episode and undifferentiated rage

toward the headstones did not counterbalance the fact that "each gravestone was injured by a

separate act, in a separate place, at a separate time." *Id.*

The results in this case and *Morro* are entirely consistent with other New Mexico

decisions where there can be multiple acts of criminal sexual penetration perpetrated on a single

victim. *E.g., Bernal v. Lytle,* 125 F.3d 861 at \*\*3-4(10th Cir. 1997) (unpublished), *cert. denied,*

522 U.S. 1151 (1998); *Herron v. State,* 805 P.2d 624 (N.M. 1991). The result is also consistent

with the Supreme Court decisions cited in *Burleson.* *See* 278 F.3d at 1142. For example, *Ex*

*Parte Harvey* found "each act of mailing a letter from the post office in furtherance of a

fraudulent scheme 'is not . . . a continuous offence, but . . . a single isolated act, and is repeated as

often as the act is repeated." *Id.* In *Ebeling v. Morgan,* 237 U.S. 625 (1915), the Court found

that prohibiting tearing "any mail bag" evidences legislative intent to proscribe isolated acts,

whereas prohibiting tearing "mailbags" would have evidenced legislative intent to proscribe a

course of action. *Id.* Here, as in *Ebeling,* the statute prohibits "shooting at . . . a motor vehicle"

not "motor vehicles."

Given the unrebutted factual finding of separate and discrete acts, the closely analogous

decision in *Morro,* the New Mexico Supreme Court's denial of certiorari making the Court of

Appeals' decision the state's position on the matter, and the deference required of state decisions

for this type of analysis and under AEDPA generally, I find that the Court of Appeals decision is

not contrary to or an unreasonable application of Supreme Court precedent.

### *G. Cumulative Error*

Because there is no constitutional error, Petitioner "also fails to establish any cumulative

error warranting habeas relief." *Neill v. Gibson,* ___ F.3d ___, 2001 WL 1584819 *15 (10th Cir.

12/7/01) (citing *Clayton v. Gibson,* 199 F.3d 1162, 1180 (10th Cir. 1999), *cert. denied,* 531 U.S.

838 (2000)); *see also Moore v. Reynolds,* 153 F.3d 1086, 1113 (10th Cir. 1998) ("Cumulative

error analysis applies where there are two or more actual errors; it does not apply to the

cumulative effect of non-errors."), *cert. denied,* 526 U.S. 1025 (1999).

Wherefore,

**IT IS HEREBY RECOMMENDED** that the petition be denied and this action dismissed

with prejudice.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with The Clerk of The District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with The Clerk of The District Court within The ten day period if that party wants to have appellate review of The proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

_____
UNITED STATES MAGISTRATE JUDGE